UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                              )
FRESENIUS MEDICAL CARE        )
HOLDINGS, INC.,               )
                              )
          Plaintiff,          )
                              )
     v.                       )     CIVIL ACTION NO.
                              )     08-CV-12118-PBS
                              )
UNITED STATES OF AMERICA,     )
                              )
          Defendant.          )
_____)
```

**MEMORANDUM AND ORDER**

June 25, 2010

Saris, U.S.D.J.

## I.   INTRODUCTION

Plaintiff Fresenius Medical Care Holdings, Inc., ("FMCH")
brings this suit to recover taxes on civil settlement payments
made pursuant to a 2000 global resolution of civil and criminal
claims under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-
3733, and other statutory and common law provisions.  Plaintiff
claims that language in the civil settlement agreements provides
that those settlement payments are non-punitive and therefore tax
deductible as ordinary and necessary business expenses under 26
U.S.C. § 162(a).  Challenging the decision of the Internal
Revenue Service ("IRS") to disallow a deduction, FMCH now moves
for summary judgment.  After discovery, hearing, and review of
the briefs, the Court **DENIES** the Motion.

## II.   BACKGROUND

With all reasonable inferences drawn in the government's favor, the record contains the following facts, which are undisputed unless otherwise noted.

### A.   The 2000 Global Settlement Agreement

On January 18, 2000, the parties signed a global settlement agreement (the "Global Agreement") resolving a series of qui tam suits against FMCH and its subsidiaries on claims of Medicare fraud.[1]  The Global Agreement consisted of a master agreement, three criminal plea agreements (the "Criminal Agreements"), and four civil settlements (the "Civil Agreements").  The Global Agreement required FMCH to pay a total of $486,334,232 to the United States -- $101,186,898 under the Criminal Agreements and $385,147,334 under the Civil Agreements.

The agreements are interconnected and contingent upon the guilty pleas of three of FMHC's subsidiaries and FMHC's performance of its obligations under the Civil Agreements.  Each Civil Agreement refers explicitly to the obligations of the "other civil Settlement Agreements and criminal Plea Agreements executed contemporaneously . . . ."  (Compl. Ex. E at 15; Ex. F

---

[1] The qui tam actions and investigations, which began in the mid-1990s, originally targeted National Medical Care, Inc., ("NMC") then a subsidiary of W.R. Grace & Co.  NMC became a wholly-owned subsidiary of Fresenius AG in 1996.  The Global Agreement resolved claims against multiple FMCH subsidiaries, including Lifechem, Inc., NMC Medical Products, Inc., and NMC Homecare, Inc.

at 11; <u>see also</u> Compl., Ex. G. at 8; Ex. H at 7.)  The Criminal

Agreements do not provide for restitution in light of the

contemporaneous civil settlements from which "the loss suffered

by each of the federal health care programs will be recompensed .

. . ."  (Compl. Ex. B at 3; <u>see also</u> Ex. C at 3; Ex. D at 3.)

     The Civil Agreements release FMCH from any civil claims

under the False Claims Act, the Program Fraud Civil Remedies Act,

31 U.S.C. §§ 3801-3812, the Civil Monetary Penalties Law, 42

U.S.C. § 1320a-7a, and common law, as well as the qui tam claims.

The agreements contain no provisions governing how the United

States should allocate the money, aside from directing

$65,800,555 to the relators of the qui tam suits.  The Civil

Agreements provide, "Nothing in this Agreement constitutes an

agreement by the United States concerning the characterization of

the amounts paid hereunder for purposes of any proceeding under

Title 26 of the Internal Revenue Code."  (Compl. Ex. E at 42; Ex.

F at 26; Ex. G at 31; Ex. H at 22.)  Another section explains,

"Notwithstanding any term of this Agreement, the United States

specifically does not release [the FMCH entities] from . . . any

potential criminal, civil or administrative claims arising under

Title 26, U.S. Code (Internal Revenue Code) . . . ."  (Compl. Ex.

E at 26; Ex. F at 17; Ex. G at 17; Ex. H at 14.)  The Agreements

also state:

          NMC Homecare, NMC and FMCH, and the NMC companies waive
          and will not assert any defenses these entities may
          have to any criminal prosecution or administrative

-3-

action relating to the conduct described in Preamble
Paragraph G, which defenses may be based in whole or in
part on a contention that, under the Double Jeopardy
Clause of the Fifth Amendment of the Constitution or
Excessive Fines Clause of the Eighth Amendment of the
Constitution, this Settlement Agreement bars a remedy
sought in such criminal prosecution or administrative
action.  <u>NMC Homecare, NMC, FMCH, and the NMC Companies
further agree that nothing in this Agreement is
punitive in purpose or effect</u>.

(Compl., Ex. E at 37 (emphasis added); <u>see also</u> Compl., Ex. F at

22; Ex. G at 26; Ex. H at 17.)  The Civil Agreements all contain

integration clauses.

**B.**   **<u>FMCH's Tax Returns and the IRS Examination</u>**

In its 2000 and 2001 federal income tax returns, FMCH

claimed deductions for the entire civil payment and $92,345,665

of the criminal payment as ordinary and necessary business

expenses under 26 U.S.C. § 162(a).  FMCH filed amended returns on

April 4, 2005, and no longer claims a deduction for payments made

under the Criminal Agreements.  The IRS examined FMCH's 1999,

2000, and 2001 returns, ultimately issuing a Revenue Agent's

Report disallowing $192,595,817 of the $385,147,334 deduction

claimed by FMCH for payments made under the Civil Agreements.

The Report relied upon an internal Department of Justice

Healthcare Fraud Tracking Form ("Tracking Form") describing the

distribution of the settlement money among the affected agencies.

FMCH did not have access to the Tracking Form prior to filing its

1999, 2000, and 2001 tax returns.  The Report drew a distinction

between "single" and "multiple" damages, determining that the

latter constituted punitive damages not deductible under section 162(a).  It concluded that the "government's single damages can be measured solely by reference to the amounts paid to the defrauded agencies," as indicated on the Tracking Form.  (Compl., Ex. J at 23.)  The IRS audit team determined that the remaining payments, consisting of relators' fees, investigation expenses, and a sum labeled on the Tracking Form as "Penalties and Damages," constituted a penalty and therefore were not deductible.  FMCH paid the taxes owed on the disallowed sum, but protested the IRS's position.  During the administrative appeal, the IRS agreed to allow FMCH to deduct the approximately $65 million in relators' fees.

C.   **The Present Refund Suit**

On February 12, 2007, FMCH filed a claim for refund for tax years 1999, 2000, and 2001.  The IRS maintains that the remaining civil settlement payments, totaling $126,796,262, are not deductible.  FMCH brings the present suit for refund of the taxes paid on that amount under 26 U.S.C. § 7422.  Pursuant to this Court's June 15, 2009, scheduling order, the parties took preliminary discovery on the issue of whether the Global Agreement and Civil Agreements alone provide a sufficient basis to justify FMCH's claimed deduction for the payments made under the Civil Agreements.

### III.   LEGAL STANDARD

"Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  Barbour v. Dynamics Research Corp., 63 F.3d 32, 36-37 (1st Cir. 1995) (quoting Fed. R. Civ. P. 56(c)).  To succeed on a motion for summary judgment, "the moving party must show that there is an absence of evidence to support the nonmoving party's position."  Rogers v. Fair, 902 F.2d 140, 143 (1st Cir. 1990); see also Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Once the moving party has made such a showing, "the burden shifts to the non-moving party, who 'may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial.'"  Barbour, 63 F.3d at 37 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  The non-moving party must establish that there is "sufficient evidence favoring [its position] for a jury to return a verdict [in its favor].  If the evidence is merely colorable or is not significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50 (internal citations omitted).  The Court must "view the facts in the light most favorable to the non-moving party, drawing all reasonable

-6-

inferences in that party's favor."  <u>Barbour</u>, 63 F.3d at 36
(citation omitted).

## IV.  DISCUSSION

### A.  <u>Taxation of Penalties</u>

The core issue is whether the $126,796,262 portion of the
settlement is tax deductible.  It is FMCH's burden to demonstrate
that it is entitled to a deduction.  <u>See</u> <u>INDOPCO, Inc. v. Comm'r</u>,
503 U.S. 79, 84 (1992) (noting the "familiar rule that an income
tax deduction is a matter of legislative grace and that the
burden of clearly showing the right to the claimed deduction is
on the taxpayer." (quotations omitted)).

The Internal Revenue Code permits taxpayers to deduct "all
the ordinary and necessary expenses paid or incurred during the
taxable year in carrying on any trade or business . . . ."  26
U.S.C. § 162(a).  Longstanding precedent establishes that amounts
paid to settle litigation may constitute such an expense.  <u>See,
e.g.</u>, <u>Redwood Empire Sav. & Loan Ass'n v. Comm'r</u>, 628 F.2d 516,
520 (9th Cir. 1980); <u>Ditmars v. Comm'r</u>, 302 F.2d 481, 485 (2d
Cir. 1962).  However, "[n]o deduction shall be allowed . . . for
any fine or similar penalty paid to a government for the
violation of any law."  26 U.S.C. § 162(f).

Treasury regulations interpreting Section 162(f) define a
"fine or similar penalty" as payment made under one of the
following four circumstances:

-7-

(i)     Paid pursuant to conviction or a plea of
        guilty or nolo contendere for a crime (felony
        or misdemeanor) in a criminal proceeding;

(ii)    Paid as a civil penalty imposed by Federal,
        State, or local law . . . ;

(iii)   Paid in settlement of the taxpayer's actual
        or potential liability for a fine or penalty
        (civil or criminal); or

(iv)    Forfeited as collateral posted in connection
        with a proceeding which could result in
        imposition of such a fine or penalty.

20 C.F.R. § 1.162-21(b)(1).  "Compensatory damages . . . paid to

a government do not constitute a fine or penalty."  Id. § 1.162-

21(b)(2).  In Southern Pacific Transportation Co. v.

Commissioner, 75 T.C. 497, 652-53 (1980), the Tax Court addressed

the applicability of Section 162(f) in terms of the purpose of

civil settlement payments, characterizing them as either remedial

(deductible) or punitive (not deductible).  The former are

"imposed to encourage prompt compliance with the law, or as a

remedial measure to compensate another party for expense incurred

as a result of the violation," while the latter are "imposed for

purposes of enforcing the law and as punishment for the violation

thereof . . . ."  Id.

B.     **Interpretation of the Civil Agreement**

FMCH argues that the plain language of the Civil Agreements

identifies the payments as non-punitive, and therefore not a

penalty within the meaning of Section 162(f).  FMCH's argument

hinges on language present in each of the Civil Agreements

-8-

stating that "[the FMCH entities] further agree nothing in this
Agreement is punitive in purpose or effect." (Compl., Ex. E at
37; <u>see also</u> Compl., Ex. F at 22; Ex. G at 26; Ex. H at 17.)  The
government responds that the cited language merely constitutes a
concession by FMCH that the civil payments are not punishment for
purposes of the Double Jeopardy Clause of the Fifth Amendment and
the Excessive Fines Clause of the Eighth Amendment.

      The Court applies federal common law to interpret the
settlement agreement.  <u>See</u> <u>United States v. Seckinger</u>, 397 U.S.
203, 209-10 (1970) (holding that federal common law governs
contracts entered into by the United States).  Federal common law
applies "common-sense canons of contract interpretation."  <u>Smart</u>
<u>v. Gillette Co. Long-Term Disability Plan</u>, 70 F.3d 173, 178 (1st
Cir. 1995) (internal quotation omitted).  Where the contract
language is unambiguous, courts enforce agreements according to
their plain meaning.  <u>Nault v. United States</u>, 517 F.3d 2, 4 (1st
Cir. 2008).  Contract language is ambiguous "when the disputed
terms are facially inconsistent or reasonably susceptible to
multiple, plausible interpretations."  <u>Id.</u>  When interpreting an
unambiguous contract, the Court disregards extrinsic evidence.
<u>Filiatrault v. Comverse Tech., Inc.</u>, 275 F.3d 131, 137 (1st Cir.
2001).

      An analysis of this dispute must begin with the damages
provisions of the FCA.  The Supreme Court has recognized that the
treble damages provision in § 3729(a) added by the 1986

amendments to the FCA has "a compensatory side, serving remedial purposes in addition to punitive objectives." Cook County v. United States ex rel. Chandler, 538 U.S. 119, 130 (2003). "While the tipping point between payback and punishment defies general formulation," it added, "the facts about the FCA show that the damages multiplier has compensatory traits along with punitive." Id. One indication that the treble damages alone have a remedial purpose under the FCA is the "qui tam feature with its possibility of diverting as much as 30 percent of the Government's recovery to a private relator who began the action." Id. at 131. "The treble feature thus leaves the remaining double damages to provide elements of make-whole recovery beyond mere recoupment of the fraud." Id. Compensation for the fraud includes costs, delays, and inconveniences occasioned by the fraudulent claims, as well as pre-judgment interest, "which is usually thought essential to compensation." Id.; see generally United States v. Bornstein, 423 U.S. 303, 314-17 (1976) (describing the make-whole purpose of the FCA's then-existing doubling provision). Because multiple damages can serve remedial as well as punitive objectives, the amount that can be deducted as a result of civil settlement for claims brought under the FCA can sometimes not be tallied without a trial. See, e.g., Talley Indus. Inc. v. Comm'r, 116 F.3d 382, 387 (9th Cir. 1997) (holding that a genuine issue of material fact existed regarding whether payment in excess of the government's actual losses constituted

compensation or double damages and, if the latter, the intended purpose of any multiple damages).

Plaintiff insists that the plain language in the civil settlements resolves the issue of the purpose of the payments because the parties agreed that the damages were not punitive. While having surface appeal, this argument is not persuasive because of the context of the language, which appeared in the last sentence of a paragraph waiving FMCA's rights under the Double Jeopardy Clause of the Fifth Amendment and the Excessive Fines Clause of the Eighth Amendment.  Arguing that the government cannot have its cake and eat it too, plaintiff raises the point that it is hardly reasonable to construe this language as agreeing that a payment is not punitive for constitutional purposes, but that it is punitive for tax purposes.  However, the Supreme Court has "long recognized that the Double Jeopardy Clause does not prohibit the imposition of all additional sanctions that could, 'in common parlance,' be described as punishment."  Hudson v. United States, 522 U.S. 93, 99-101 (1997).  Instead, courts must apply a multi-factorial test in determining whether a civil penalty violates the Double Jeopardy Clause.  See id.  In Talley, the Ninth Circuit expressly rejected a similar argument:

> That the double damages portion of the penalty imposed
> by the FCA does not constitute criminal "punishment"
> within the meaning of the Double Jeopardy Clause . . .
> does not mean that such damages are not within the
> ambit of section 162(f).  In short, whether a payment

-11-

> is deemed compensatory for double jeopardy purposes
> does not determine whether the payment is deductible
> under the Tax Code.  Cf. In re Commonwealth Cos., 913
> F.2d 518, 526 (8th Cir. 1990) (concluding [that the
> Supreme] Court in [United States v. Halper, 490 U.S.
> 435 (1989)] did not invalidate holdings that FCA serves
> both compensatory and deterrent purposes).

116 F.3d at 388.

As such, one reasonable interpretation of the nothing-punitive language was that it was intended to nail down the waiver in the uncertain area of the law governing when a civil penalty constitutes criminal punishment.  This interpretation is bolstered not only by the placement of the nothing-punitive sentence, but also by its wording.  That is, only FMCH, not the government, agreed that the purpose was not punitive.  Moreover the agreements state that, notwithstanding their other terms, the United States does not release FMCH from any claims arising out of the Internal Revenue Code and that the United States agrees to no characterization of the payments under the Code.  The presence of specific provisions expressly disavowing an agreed upon tax treatment of the payments supports the government's reading of the nothing-punitive language.

Because of this conflicting language in the agreements, the placement of the nothing-punitive language, and its wording, I conclude that the contract is ambiguous, making the issue of the purpose of the payments inappropriate for summary judgment.

### 2.   <u>**Off-Track Argument**</u>

FMCH challenges the IRS's determination that all damages beyond the compensation paid directly to defrauded government agencies necessarily constitute punitive fines.  In reaching this conclusion, the IRS relied on the DOJ Tracking Forms, which FMCH attacks as "after-the-fact secret government forms".  (Pl.'s Br. 25.)  While this challenge may ultimately prove meritorious as a factual matter, the question presently before the Court is whether FMCH is entitled to a deduction as a matter of law based on the plain language of the contract.  It is not.

**ORDER**

Plaintiff's Motion for Summary Judgment [Docket No. 23] is **<u>DENIED</u>**.

/s/ PATTI B. SARIS
PATTI B. SARIS
United States District Judge
